**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS**, a labor organization, on behalf of its member **BILL JENKINS**,<br><br>Plaintiff,<br><br>v.<br><br>**KELAYE CONCRETE LLC**, an Oregon corporation,<br><br>Defendant. | Case No. 3:16-cv-2242-SI<br><br>**OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

Plaintiff Pacific Northwest Regional Council of Carpenters ("Plaintiff") brings this breach of contract action on behalf of Bill Jenkins ("Jenkins") against Kelaye Concrete LLC ("Defendant"). Plaintiff alleges that Defendant failed to pay Jenkins penalty wages, allegedly incurred due to Defendant's failure timely to pay Jenkins regular wages. Defendant failed to answer or otherwise respond to Plaintiff's Complaint, and on January 20, 2017, the Court entered an Order of Default against Defendant. ECF 8. Before the Court is Plaintiff's motion for a default judgment against Defendant. For the reasons that follow, Plaintiff's motion is granted in part.

## STANDARDS

Under Federal Rule of Civil Procedure 55(a), the Clerk of the Court is required to enter an order of default if a party against whom affirmative relief is sought fails timely to answer or otherwise defend an action. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Upon the entry of default, the Court accepts "the well-pleaded factual allegations" of the complaint "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The court, however, does not accept as true facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages. *DIRECTV*, 503 F.3d at 854; *Geddes*, 559 F.2d at 560; *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("'The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987))).

After default has been entered against a defendant, a court may enter a default judgment against that defendant. *See* Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 786 (9th Cir. 2011) (noting that a district's court decision whether to enter a default judgment is reviewed for abuse of discretion). In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set out factors to guide a district court's consideration of whether to enter a default judgment. *See DIRECTV*, 503 F.3d at 852 (noting that *Eitel* "set[] out factors to guide district court's determination regarding the appropriateness of granting a default judgment").

The Ninth Circuit in *Eitel* held:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d at 1471-72. The "starting point" of the court's analysis, however, "is the general rule that default judgments are ordinarily disfavored." *Id.* at 1472.

**BACKGROUND**

Because the Court has entered default against Defendant, the facts as alleged by Plaintiff, except those relating to damages, are taken as true. Plaintiff, a labor organization headquartered in Washington, dispatched Jenkins to work for Defendant beginning on January 6, 2015. Complaint ¶¶ 4, 9 (ECF 1). Defendant laid off Jenkins on June 9, 2016, without having paid Jenkins his wages earned during the previous three weeks. Complaint ¶ 11. A contract signed by Plaintiff and Defendant (the "Contract," excerpted at ECF 10-1) obligates Defendant to pay Jenkins his wages in full on a weekly basis and immediately to pay Jenkins all amounts due in the event that Jenkins is laid off during normal office hours. Complaint ¶ 7. The Contract also obligates Defendant to pay Jenkins penalty wages if Defendant does not pay Jenkins in accordance with the Contract. Complaint ¶ 7. Jenkins did not receive full payment of his regular wages until July 26, 2016, almost two months late, and he has not received any penalty wages. Complaint ¶ 13.

The Contract contains a four-step procedure for resolving grievances and disputes between Plaintiff and Defendant. ECF 10-1 at 9-11. As relevant to this lawsuit, steps three and four require mediation and arbitration, respectively. Contract art. 11, § 2. On June 21, 2016,

Plaintiff initiated a grievance against Defendant under the Contract. Complaint ¶ 12. Plaintiff requested a mediator on August 5, 2016. Complaint ¶ 16. Defendant failed to appear at the mediation scheduled for November 4, 2016, and the mediator released Plaintiff from the mediation. Complaint ¶ 17. Plaintiff notified Defendant that Defendant's failure to appear constituted a refusal to mediate. Complaint ¶ 18. On November 8, 2016, Plaintiff acquired a list of seven arbitrators and provided that list to Defendant. Complaint ¶¶ 19-20. The Contract required Plaintiff and Defendant alternatively to strike arbitrators from the list until only one arbitrator remained, but Defendant failed to strike any arbitrators after receiving the list of arbitrators from Plaintiff. Complaint ¶ 20. Plaintiff notified Defendant on November 10, 2016, that it would pursue litigation in federal court if Defendant did not participate in the arbitration process. Complaint ¶ 21. Defendant responded that it was consulting an attorney about how to proceed. Complaint ¶ 21. Plaintiff sent Defendant a final demand to participate in arbitration on November 18, 2016, but Defendant refused to participate. Complaint ¶ 23. Plaintiff filed this suit on November 30, 2016. Complaint ¶ 23.

The Court entered an Order of Default against Defendant on January 20, 2017. ECF 8. On April 10, 2017, Plaintiff filed a motion for default judgment against Defendant, seeking Jenkins' penalty wages, prejudgment interest, an award of costs and disbursements, and attorney's fees. Plaintiff requests that the Court retain jurisdiction in order to award any further costs and attorney's fees incurred as a result of executing any judgment entered. Defendant did not respond to Plaintiff's motion for default judgment.

## DISCUSSION

The Court finds that the factual allegations in the Complaint establish that Defendant breached the Contract with Jenkins by failing to pay Jenkins penalty wages and repudiating the

Contract's mediation and arbitration procedures. The Court also finds that the *Eitel* factors weigh in favor of entering the default judgment.

The Court may not accept as true the allegations relating to damages. Thus, Plaintiff attaches declarations and documents to its motion for default judgment, including relevant excerpts of the Contract (ECF 10-1); email correspondence between Plaintiff's counsel, a representative of Defendant, and others (ECF 13-1, 13-2, 13-3, 13-4, 13-5, 13-6); the billing records of Plaintiff's counsel (ECF 13-7); and average attorney billing rates from the Oregon State Bar (ECF 13-8). Plaintiff seeks $12,194.16 in penalty wages, $1,034.81 in prejudgment interest, $524.81 in costs and disbursements, and $4,625 in attorney's fees.

**A. Penalty Wages**

The Contract specifies that "[e]mployees shall be paid in full once each week (on the same day), but in no event shall more than five (5) days (Saturday, Sunday and holidays excluded) wages be withheld." Contract art. 9, § 1.A. "When employees are laid off during normal office hours, they shall be paid in full immediately." Contract art. 9, § 2.A. The Contract also specifies a penalty for late payments: "[i]f the payment is not made expressly as provided herein, then the employee shall be paid two (2) hours pay at the appropriate hourly wage rate for each twenty-four (24) hour period thereafter until payment is made." Contract art. 9, § 1.E. The appropriate hourly wage rate is contractually established at $40.92 per hour. ECF 10-1 at 13.

On June 3, 2016, Defendant issued Jenkins a paycheck for wages due from the pay period ending on May 28, 2016, but Jenkins' bank did not honor the check because Defendant had issued it from a closed account. Complaint ¶ 10. Jenkins received payment on this check on July 26, 2016, which is 53 days after June 3, 2016. Thus, Jenkins is entitled to 106 hours (two hours per day for 53 days) of penalty wages for this check at a rate of $40.92 per hour. This is a total of $4,337.52.

On June 9, 2016, Defendant terminated Jenkins. Complaint ¶ 11. The record contains no facts to suggest that the termination occurred outside of normal office hours. Thus, the Contract obligated Defendant to pay Jenkins in full as of June 9, 2016. Jenkins received full payment on July 26, 2016, which is 47 days after June 9, 2016. Thus, Jenkins is entitled to 94 hours of penalty wages (two hours per day for 47 days) for the payment that was due on June 9, 2016, at a rate of $40.92 per hour. This is a total of $3,846.48.

Plaintiff argues that it is entitled to 192 hours (96 days) of penalty wages for the payment that was due on June 9, 2016. Plaintiff makes two errors in this calculation. First, Plaintiff miscalculates the number of days between June 9, 2016, and July 26, 2016, as 48 days, instead of 47 days. Second, Plaintiff argues that Defendant owed Jenkins two payments on June 9, 2016, both of which accrue penalty wages. Plaintiff argues that the payment due on June 9, 2016, should count as two missed payments because on June 9, 2016, Defendant owed Jenkins for wages accrued during Jenkins' final two pay periods, in addition to the payment due on June 3, 2016. Because Jenkins received one pay check per pay period, Plaintiff argues, Jenkins was entitled to two checks on June 9, 2016. This argument misinterprets the Contract. The Contract states that employees "shall be paid in full immediately" when they are terminated. Contract art. 9, § 2.A. The only reasonable interpretation of the Contract is that Jenkins is entitled to one final payment upon termination, not two simultaneous payments.

Thus, the Court finds that Plaintiff has met its burden to prove damages only in the amounts of $4,337.52 for the payment due on June 3, 2016 and $3,846.48 for the payment due on June 9, 2016. Total damages, thus, are $8,184.00.

**B. Prejudgment Interest**

Plaintiff seeks $1,034.81 in prejudgment interest accruing from July 26, 2016, through April 10, 2017, the filing date of the motion for a default judgment. Plaintiff asserts that the correct prejudgment interest rate is 12 percent per year.

When a plaintiff's claims arise under state law, as they do here, "[s]tate law generally governs awards of prejudgment interest in diversity actions." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). Plaintiff relies on Washington law. Plaintiff's headquarters is located in Washington. Complaint ¶ 4. In addition, the Contract at issue related to a construction project in Seattle, Washington. Complaint ¶ 6. Further, Defendant agreed to be bound by the terms of the Western and Central Washington Master Labor Agreement between Plaintiff and the Associated General Contractors of Washington. Complaint ¶ 6. It is, therefore, a reasonable conclusion that Washington law governs this dispute. Under Washington law,

> interest prior to judgment is allowable (1) when an amount claimed is 'liquidated' or (2) when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

*Prier v. Refrigeration Eng'g Co.*, 74 Wash. 2d 25, 32 (1968). When a contract does not specify a different interest rate, the statutory rate of interest in Washington is 12 percent per year. Wash. Rev. Code § 4.56.1109(4); *id.* § 19.52.020(1).

The Court finds that Plaintiff is entitled to prejudgment interest on $8,184.00 in damages because the express terms of the Contract obligate Defendant to pay Plaintiff $4,337.52 in penalty wages for the payment due on June 3, 2016, and $3,846.48 for the payment due on June 9, 2016. The amount of penalty wages became ascertainable and due under the Contract on July

26, 2016, when Jenkins received full payment of his regular wages. Prejudgment interest accrues at a rate of 12 percent from July 26, 2016, through the date of judgment, which is entered contemporaneously with this Opinion and Order. Thus, Plaintiff is entitled to $758.76 in prejudgment interest.

**C. Costs and Attorney's Fees**

Finally, Plaintiff seeks an award of costs and attorney's fees based on Defendant's alleged bad faith refusal to mediate and arbitrate this dispute. "[A]bsent contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorneys' fees. However, a court may assess attorneys' fees 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (citations omitted) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). The Court finds that Defendant's conduct does not rise to this standard.

Plaintiff relies on two cases in support of its argument that it is entitled to attorney's fees and costs. *See Sheet Metal Workers' Int'l Assoc. Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186 (9th Cir. 1996); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., & its Local 492 v. Williams Controls, Inc.*, 570 F. Supp. 2d 1273 (D. Or. 2008). In *Sheet Metal Workers*, an employer failed to comply with an earlier arbitration award, which resulted in a new arbitration award imposing additional penalties. 84 F.3d at 1189. After the employer failed to comply with the second award, the union filed suit in federal court to enforce the award, and employer counter-claimed, seeking to vacate the award. *Id.* The Ninth Circuit upheld the district court's award of attorney's fees to the union because the employer "acted in bad faith in failing to respect the arbitration award[,] . . . simply refus[ing] to honor the award rather than filing a petition to vacate it, and request[ing] a vacation of the award only in response to the union's

petition to confirm it." *Id.* at 1192. In *International Union*, a union sued an employer to compel the employer to arbitrate a dispute with an employee. 570 F. Supp. 2d at 1274. The employer argued that it could not be compelled to arbitrate because the union filed its grievance too late and timeliness was a question for the court, not the arbitrator. *Id.* at 1277. The district court awarded the union attorney's fees and costs because the employer had "failed to provide any valid cases in support of its argument . . . and . . . ignored substantial precedent requiring procedural arbitrability issues, such as timeliness, to be decided by an arbitrator." *Id.* at 1279.

The Court has reviewed the Complaint (ECF 1) and the email correspondence between Plaintiff's counsel, a representative of Defendant, and others (ECF 13-1, 13-2, 13-3, 13-4, 13-5, 13-6). Defendant's conduct is unlike the conduct at issue in *Sheet Metal Workers* and *International Union*. Defendant has not failed to respect any arbitration award because there has been no award. Nor has Defendant failed to cite valid cases in support of its arguments because Defendant has made no arguments. Rather, Defendant simply repudiated the Contract's mediation and arbitration procedures and failed to appear to defend against this lawsuit. The Court declines to find that a party engages in bad faith solely by repudiating a contract and failing to appear. Moreover, Defendant's conduct likely benefitted Plaintiff. As a result of Defendant's conduct, Plaintiff has obtained a default judgment against Defendant without expending substantial sums of money on arbitration and litigation costs. Thus, Plaintiff is not entitled to attorney's fees and costs.

/ / /

/ / /

## CONCLUSION

Plaintiff's Motion for Default Judgment (ECF 9) is GRANTED in part. Plaintiff is entitled to $8,184.00 in damages plus $758.76 in prejudgment interest. The Court retains jurisdiction to enforce this award and to provide any further relief that may be appropriate.

**IT IS SO ORDERED**.

DATED this 4th day of May, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge